**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-09-CR-1567-FM** |
| | § | |
| **LUTHER JONES (1) and GILBERT** | § | |
| **SANCHEZ (2),** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER REGARDING**
**DEFENDANTS' JOINT MOTION TO DISMISS ALL FIVE COUNTS OF THE INDICTMENT**

On this day, the Court considered Luther Jones ("Jones") and Gilbert Sanchez's ("Sanchez")

(collectively, "Defendants") "Defendants' Joint Motion to Dismiss All Five Counts of the Indictment"

("Motion to Dismiss the Indictment") [Rec. No. 72], filed September 10, 2009, and the United States of

America's ("Government") "Government's Opposition and Response to Defendants' Joint Motion to

Dismiss the Five Counts Charged in the Indictment" [Rec. No. 82], filed September 21, 2009.

**I.      BACKGROUND**

On May 28, 2009, the Grand Jury handed down a five-count Indictment against Jones and

Sanchez.  The Government charged Defendants with conspiracy to commit wire fraud, conspiracy to

commit mail fraud, mail fraud, and one count of bribery each.  Specifically, the Government charged

Jones and Sanchez with a scheme to defraud El Paso County ("County") and its citizens of the rights to

Sanchez's and two unnamed County officials' honest services, and a scheme for obtaining money and

property through material false and fraudulent pretenses, representations, and promises.  The

Government alleged Jones and Sanchez schemed to structure a County Request for Proposal ("RFP") for

a digitization contract ("Contract") so that Jones's client, Vendor-1, could get the Contract.  The

Government alleged Jones offered to pay $750.00 of Sanchez's expenses for a trip to Las Vegas, Nevada

to attend a meeting regarding the digitization of records, and in exchange, Sanchez would have Vendor-1

presented as the best choice for the Contract to the El Paso Commissioner's Court ("Commissioner's Court").

On June 5, 2009, Defendants waived personal appearance at their arraignments and entered pleas of not guilty. Defendants subsequently filed their Motion to Dismiss the Indictment, requesting the Court to dismiss all five counts of the Indictment. For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion to Dismiss the Indictment.

## II.    SUFFICIENCY OF THE INDICTMENT

The fifth amendment makes clear that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury,"[1] and any defendant must "be informed of the nature and cause of the accusation" against him.[2] "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."[3] A defendant must raise "a motion alleging a defect in the indictment or information – but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."[4] Likewise, "[a] party may raise by pretrial motion any defense . . . that the court can determine without a trial of the general issue."[5]

An indictment will suffice if "it conforms to minimal constitutional standards."[6] "An indictment is sufficient if it (1) contains the elements of the offense charged, (2) fairly informs the defendant of the charge, and (3) enables the defendant to plead acquittal or conviction in bar of future prosecutions for the

---

[1] U.S. CONST. amend. V.

[2] U.S. CONST. amend. VI.

[3] FED. R. CRIM. P. 7(c)(1).

[4] FED. R. CRIM. P. 12(b)(3)(B).

[5] FED. R. CRIM. P. 12(b)(2).

[6] *United States v. Wiley*, 979 F.2d 365, 367 (5th Cir. 1992).

same offense.'"[7]  For purposes of defining the elements of the offense, an indictment can "set forth the offense in the words of the statute itself, as long as 'those words [] themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence [sic] intended to be punished.'"[8]  With certain offenses, in which the question of guilt turns "crucially upon such a specific identification of fact," however, the statutory language alone may not be sufficient.[6]  Rather, the Government must charge the crime with greater specificity to ensure that the defendant receives fair notice and that any ensuing conviction arises out of the theory of guilt presented to the grand jury.[7]

## III.  DISCUSSION

Defendants argue all five counts of the Indictment are time-barred.  Defendants further argue that even if the Government timely-charged the five counts, they are still subject to dismissal for other reasons.  The Government contends all the charges against Defendants were timely filed, and the Indictment sufficiently alleges the five charges.

     *A.*     *Counts One and Two – Conspiracy to Commit Wire Fraud and Conspiracy to Commit Mail Fraud*

     1.     Parties' Arguments

     *a.*     *Whether the Government Timely Charged the Conspiracies*

Defendants argue the Government failed to timely charge Counts One and Two, conspiracies to commit wire fraud and mail fraud, respectively.  Defendants assert any conspiracy to commit wire fraud

---

[7] *Id.*

[8] *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974) (citation omitted); *see also* Fed. R. Crim. P. 7(c)(1) (providing an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged").

[6] *See United States v. Resendiz-Ponce*, 549 U.S. 102, 109, 127 S. Ct. 782, 789 (2007) (citation omitted) (internal quotation marks omitted).

[7] *Id.* at 109-10, 127 S. Ct. at 789.

ended when the objective of the conspiracy was achieved – the transmission of the wire communication. Defendants contend the alleged transmission occurred on May 23, 2004, and therefore, the Government's May 28, 2009, Indictment was outside of the five-year statute of limitations period. With respect to the conspiracy to commit mail fraud, Defendants contend the alleged mailing occurred on May 27, 2004, and therefore, the conspiracy ended on that day, which was five years and one day before the Government filed the Indictment. Defendants also argue the Government cannot establish an element of mail fraud conspiracy because the alleged mailing did not further the scheme to defraud.

The Government argues Defendants rely only on the substantive law for wire fraud and mail fraud and fail to address the law of conspiracy. The Government points out the scope of the conspiracy defines its duration and whether the charged overt act was in furtherance of the conspiracy. The Government contends the Indictment alleged Defendants committed overt acts within the statute of limitations in furtherance of their scheme to defraud the County, including acts on June 4, 2004, and July 11, 2004. Hence, the Government argues the May 28, 2009, Indictment timely charged the conspiracies to commit wire fraud and mail fraud.

> b. *Whether the Government Has Sufficiently Alleged a Scheme or Artifice*

Defendants contend Counts One, Two, and Three[8] should be dismissed because the alleged scheme to defraud fails to allege a violation of state law. Defendants argue the alleged financial transactions, including the $750.00 check, were all lawful. Defendants point out that if those allegations related to the financial transactions were removed from the Indictment, the only allegations that remain are that Jones and Sanchez instructed a cooperating witness to structure the RFP in a manner that benefitted Vendor-1; and that Sanchez caused an RFP to be issued. Defendants contend this is insufficient to constitute a scheme or artifice to defraud. Defendants argue even if Sanchez was required to report the $750.00, any failure to do so would not have affected whether the scheme to defraud

---

[8] *See infra* Part III.B. Defendants allege other deficiencies as to Count Three.

advanced or regressed. Jones argues Sanchez's decision not to report the $750.00 cannot establish his participation in any alleged scheme or artifice.

Likewise, Defendants argue Vendor-1's political contribution was lawful. Defendants assert the Government also failed to allege the recipient of the contribution would not have voted for Vendor-1 absent the contribution, and therefore, the allegation is insufficient to support a scheme or artifice. Finally, Defendants argue Jones's contribution is protected by the first amendment, and the Government should be required to show its allegation of unlawful conduct is comprised of more than simply the Government's disdain of Jones's lawful political activities.

In response, the Government argues that Defendants' dispute of the facts alleged in the Indictment does not warrant its dismissal. The Government contends Jones fails to show an unconstitutional application of the charged statutes because he ignores the Government has charged him with offering bribes.

    2.   <u>Analysis</u>

    *a.*     *The Government Timely Charged the Conspiracies*

Section 1341, Title 18 of the United States Code, states

> Whoever, having devised or intending to devise any *scheme or artifice to defraud*, *or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises* . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than [twenty] years, or both.[9]

Similar to section 1341, section 1343, Title 18 of the United States Code, sets forth the following offense:

_____

[9] 18 U.S.C. § 1341 (emphasis added).

> Whoever, having devised or intending to devise any *scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than [twenty] years, or both.[10]

Section 1346, Title 18 of the United States Code, states: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."[11] Section 1349, Title 18 of the United States Code, provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."[12] The statute of limitations for mail fraud, wire fraud, and conspiracy to commit either is five years.[13]

According to the Fifth Circuit, "[t]he three elements of conspiracy to commit mail fraud are '(1) an agreement between [defendants] and others (2) to commit the crime of mail fraud, and (3) an overt act committed by one of the conspirators in furtherance of that agreement.'"[14] "To sufficiently charge the offense of mail fraud, the indictment must allege that (1) the defendant devised or intended to devise a scheme to defraud, (2) the mails were used for the purpose of executing, or attempting to execute, the scheme, and (3) the falsehoods employed in the scheme were material."[15]

> The first element includes a defendant's scheme or artifice (1) 'to deprive another of the intangible right of honest services,' (2) 'for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' or (3) 'to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful

---

[10] *Id.* § 1343 (emphasis added).

[11] *Id.* § 1346.

[12] *Id.* § 1349.

[13] *Id.* § 3282(a).

[14] *United States v. Sneed*, 63 F.3d 381, 385 (5th Cir. 1995) (citation omitted).

[15] *United States v. Ratcliff*, 488 F.3d 639, 643-44 (5th Cir. 2007) (footnote omitted).

use any counterfeit or spurious . . . article.[16]

With respect to conspiracy to commit wire fraud, the Government must allege "(1) 'two or more persons, directly or indirectly, reached an agreement to devise and execute a scheme to defraud'; (2) 'the defendant knew the unlawful purpose of the agreement;' and (3) 'the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose.'"[17]  In order to sufficiently allege a charge of wire fraud, the Government must allege a defendant "(1) engaged in a scheme to defraud and (2) used, or caused the use of, wire communications in furtherance of that scheme."[18]  "There is no specific intent requirement regarding use of the mails in a substantive mail fraud case.  'The test to determine whether a defendant caused the mails to be used is whether the use was reasonably foreseeable.'"[19]  Likewise, "[s]pecific intent to use interstate wires is not required for wire fraud; interstate wire communication need only be foreseeable."[20]

"[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy."[21] "[I]t is not necessary that any one particular overt act be proven, including actual use of the mails."[22] Relying on Supreme Court precedent, the Fifth Circuit explained, "[t]he function of the overt act requirement in a conspiracy prosecution is simply to manifest that the conspiracy is at work, and is

---

[16] *Id.* at 644 (citations omitted) (footnote omitted) (alteration in original).

[17] *United States v. Ford*, 558 F.3d 371, 375 (5th Cir. 2009).

[18] *Id.* (citations omitted).

[19] *United States v. Massey*, 827 F.2d 995, 1002 (5th Cir. 1987) (citations omitted).

[20] *United States v. Brumley*, 59 F.3d 517, 522 (5th Cir. 1995), *vacated on other grounds*, 116 F.3d 758 (5th Cir. 1997), *cert. denied*, 522 U.S. 1028, 118 S. Ct. 625 (1997).

[21] *United States v. Girard*, 744 F.2d 1170, 1172 (5th Cir. 1984) (citation omitted).

[22] *Massey*, 827 F.2d at 1001.

neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence."[23]

Here, the Government alleged Defendants agreed to hatch a scheme to deprive the County of Sanchez's honest services and a scheme for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises. Given the nature of the alleged scheme, it was reasonably foreseeable either the mails or interstate wires would be used in furtherance of the conspiracy. The Government alleged at least two overt acts Defendants took in furtherance of defrauding the County of Sanchez's honest services or for obtaining money or property.

The Government alleged a cooperating witness on June 4, 2004, structured an evaluation sheet for the Commissioner's Court that reflected Vendor-1 as the lowest bidder for the Contract. The Government alleged Sanchez gave Vendor-1 this evaluation sheet on June 7, 2004. The Government alleged Jones emailed a cooperating witness on July 11, 2004, indicating his intent to speak with Sanchez about presenting the RFP again to the Commissioner's Court. The Government also alleged Sanchez filed a campaign finance report on July 15, 2004, which did not list the $750.00 payment Jones made to Sanchez. A jury could find at least the alleged acts of June 7, 2004, July 11, 2004, and July 15, 2004, were in furtherance of either a scheme to deprive the County of Sanchez's honest services or a scheme to have Vendor-1 obtain the Contract. These alleged acts occurred within the statute of limitations.

In sum, the Government alleged Defendants entered an agreement to scheme to defraud the County and for obtaining money and property, which foreseeably could have led to use of the mails or wire communications. The Government alleged Defendants undertook at least two acts within five years of May 28, 2009, when the Government filed the Indictment. Therefore, the Government timely alleged conspiracies to commit wire fraud and mail fraud.

---

[23] *United States v. Hatch*, 926 F.2d 387, 393 (5th Cir. 1991) (citations omitted).

b.     *The Government Sufficiently Charged a Scheme or Artifice to Defraud,*
       *as well as a Scheme for the Purpose of Obtaining Money and Property*

According to the Fifth Circuit,

[i]n mail fraud cases the [G]overnment need not prove every allegation of fraudulent activities appearing in the indictment. It need only prove a sufficient number of fraudulent activities to support a jury inference that there was a fraudulent scheme. Failure of the [G]overnment to prove one or more of its allegations is not necessarily fatal to the [G]overnment's case.[24]

Political contributions invoke the first amendment's "core values"– protection of "free political speech" and the "right to support issues of great public importance."[25] Likewise, "[t]he right to make political contributions is protected under the first amendment as an important freedom of association."[26] "[C]ampaigns must be run and financed. Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do."[27] With respect to political contributions in light of the federal crime of extortion, the Supreme Court explained

[w]hatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another.[28]

To prosecute such action would be to prosecute conduct that "has long been thought to be well within the law [and] also conduct that in a very real sense is unavoidable so long as election campaigns are financed

---

[24] *United States v. Toney*, 598 F.2d 1349, 1355-56 (5th Cir. 1979) (citations omitted).

[25] *United States v. Siegelman*, 561 F.3d 1215, 1224 (11th Cir. 2009).

[26] *Let's Help Florida v. McCrary*, 621 F.2d 195, 199 (5th Cir. 1980).

[27] *McCormick v. United States*, 500 U.S. 257, 272, 111 S. Ct. 1807, 1816 (1991).

[28] *Id.*, 111 S. Ct. at 1816.

by private contributions."[29]

With respect to extortion, the Supreme Court held political contributions are illegal "if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act."[30] Hence, where "a public official demands or accepts money in exchange for [a] specific requested exercise of his . . . official power, such a demand or acceptance does constitute a violation of the [law] regardless of whether the payment is made in the form of a campaign contribution."[31] The intent in giving or accepting a political contribution is a question for the jury.[32] As a practical matter, bribery and extortion are but "different sides of the same coin."[33]

Here, the Government charged Defendants in the conjunctive with a scheme to defraud the County of Sanchez's and two unnamed public officials' honest services and a scheme for obtaining money and property by means of false or fraudulent pretenses, representations, or promises. Contrary to Defendants' assertion, the Government expressly, and by way of reference, alleged Jones and Sanchez committed state offenses. While Jones may give and Sanchez may receive political contributions, the Government charged that the exchange of the $750.00 was not a political contribution. The Government alleged the exchange was a bribe. Whether the exchange was a political contribution or a bribe turns on intent, which is a question of fact for the jury. Defendants' self-serving statements that the money was a contribution are not sufficient to demonstrate a deficiency in the charged conspiracies or the mail fraud charge.

Assuming, *arguendo*, section 1346 is vague as applied to Jones and Sanchez, Defendants do not

---

[29] *Id.*, 111 S. Ct. at 1816.

[30] *Id.* at 273, 111 S. Ct. at 1816.

[31] *Evans v. United States*, 504 U.S. 255, 258, 112 S. Ct. 1881, 1884 (1992).

[32] *McCormick*, 500 U.S. at 270, 111 S. Ct. at 1815.

[33] *See Siegelman*, 561 F.3d at 1225 (citation omitted).

address that the Government charged the scheme conjunctively. The mail fraud statute permits the Government to charge a scheme to defraud <u>or</u> a scheme for obtaining money or property. Here, the Government charged the mail fraud statute conjunctively as a scheme to defraud <u>and</u> a scheme for illegally obtaining money and property. Hence, even if the Government could not prove a scheme to defraud the County of Sanchez's honest services, it still may prove a scheme for obtaining money and property, specifically, the scheme to obtain money from the County for Vendor-1, in which Jones would share one-third of the net profit.

> B.    *Count Three – Mail Fraud*

>> 1.    <u>Parties' Arguments</u>

>>> a.    *When the Statute of Limitations Begins to Run for Mail Fraud*

Defendants contend the mail fraud charge, based on an innocent third-party vendor's mailing of a Federal Express ("FedEx") package in response to the RFP, which was manipulated by Sanchez and cooperating witnesses, is untimely. The innocent third-party vendor submitted the package to FedEx on May 27, 2004, and FedEx delivered the package to the County on May 28, 2004. The Government filed the Indictment (under seal) on May 28, 2009. Defendants argue the statute of limitations began to run when the package was placed in the mail, rather than when the package was delivered, which would mean the Indictment was filed one day after the statute of limitations period expired.

The Government contends Defendants' reading of the statute is unduly restrictive based on the plain language. The Government argues Defendants ignore <u>how</u> they were charged with using the mails. The Government asserts the statutory language provides that mail fraud can be committed in several ways, and the Government charged Defendants conjunctively, including that Defendants committed the offense when it <u>caused the FedEx package to be delivered</u>.

>>> b.    *Whether the Alleged Offense Was "for the Purpose of Executing Such Scheme or Artifice"*

Defendants contend that even if the Government timely charged Count Three, it should still be

dismissed because mailing the FedEx package did not further the alleged scheme. Defendants first point out the FedEx package was not sent by or on behalf of Jones's client, Vendor-1. Defendants argue the innocent third-party vendor mailed the FedEx package in response to the RFP on behalf of <u>itself</u>, rather than Vendor-1, and therefore, the use of the mails was not in furtherance of the scheme or artifice to defraud.

The Government admits the charged mailing of the FedEx package did not contain an instance of fraud and instead argues it was an "innocent" mailing, which nonetheless supported a mail fraud charge. The Government contends the mailing furthered the Defendants' scheme to defraud because it was used as a "smoke screen" to prevent detection of the scheme. The Government argues other vendors had to submit bids in order for Defendants to successfully scheme to defraud the County. The Government asserts the success of the scheme hinged on the appearance of a legitimate bidding process.

2. <u>Analysis</u>

a. *The Mail Fraud Charge Is Not Barred by the Statute of Limitations*

The Fifth Circuit explained "that mail fraud is a completed offense, and not a continuing offense like conspiracy[.]"[34] According to the Fifth Circuit, "[e]xecution of a scheme to commit mail fraud is punishable once per mailing."[35] Hence, every mailing in furtherance of the scheme is a separate offense.[36] "To satisfy the statute of limitations for mail fraud, the [G]overnment must prove that the predicate mailing occurred in the five years before the indictment."[37] "For the purpose of tolling the

---

[34] *United States v. Kimler*, 167 F.3d 889, 894 (5th Cir. 1999).

[35] *United States v. Miro*, 29 F.3d 194, 198 (5th Cir. 1994) (citation omitted).

[36] *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006) (footnote omitted); *see also Miro*, 29 F.3d at 198 (citation omitted) ("Notwithstanding the continuing nature of the scheme itself, each mailing constitutes a completed offense.").

[37] *United States v. Manges*, 110 F.3d 1162, 1169 (5th Cir. 1997) (citation omitted); *see also United States v. Bowman*, 783 F.2d 1192, 1197 (5th Cir. 1986) (citations omitted) ("The time of the offense is not an essential element of the offense charged and, generally speaking, proof of any date before the return of the indictment and within the statute of limitations is sufficient.").

statute of limitations, an indictment is 'found' when it is returned by the grand jury and filed."[38]

With respect to "causing" the mailing, the Supreme Court explained "'[c]ause' is a word of very broad import and its meaning is generally known. It is used in the section in its well-known sense of bringing about, and in such sense it is applicable to the conduct of [the defendant]."[39] "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used."[40] According to the Fifth Circuit, "[o]ne 'causes' an article to be delivered by mail if he acts with the knowledge that use of the mail will follow in the ordinary course or if use of the mail is reasonably foreseeable, even though not actually intended."[41]

The case law does little to explain when "knowingly caused to be delivered" ends. Fifth Circuit case law can easily be misconstrued to read this element is met when the defendant acts, but this interpretation would ignore that the Fifth Circuit is attempting to discern causation, rather than when the act is completed. It appears the Fifth Circuit's concerns lie with whether a particular delivery can be attributed to a particular act.

Given the language of the statute, "knowingly cause to be delivered" ends with delivery, otherwise the use of "delivery" in the statute would be rendered meaningless. The delivery here occurred five years to the day the Indictment was filed. Defendants have not argued any prejudice as to the Indictment being unsealed on June 5, 2009. Therefore, for purposes of the statute of limitations for mail fraud, the Indictment is timely. The question that remains is whether such a mailing was "for the purpose

---

[38] *United States v. Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987) (citations omitted); *see also United States v. Hoffecker*, 530 F.3d 137, 157 (3d Cir. 2008) (citation omitted) ("An indictment is found when it is returned by a grand jury and filed.").

[39] *United States v. Kenofskey*, 243 U.S. 440, 443, 37 S. Ct. 438, 439 (1917) (citations omitted).

[40] *Pereira v. United States*, 347 U.S. 1, 8-9, 74 S. Ct. 358, 363 (1954) (citation omitted).

[41] *United States v. Blankenship*, 746 F.2d 233, 240 (5th Cir. 1984) (citation omitted).

of executing such scheme or artifice."

        b.       *The FedEx Package Was Not Sent "for the Purpose of Executing Such Scheme or Artifice"*

The congressional purpose behind section 1341 "was 'to prevent the post office from being used to carry (such schemes) into effect.'"[42] "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud."[43] "It is not the scheme to defraud that constitutes the offense, but it is the use of the mails for the purpose of executing such scheme."[44]

As previously stated in Part III.A.2, one element of mail fraud includes that the mails were used for the purpose of executing or attempting to execute the scheme or artifice to defraud.[45] Relying on Supreme Court precedent, the Fifth Circuit stated "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching.'"[46] The scheme or artifice does not have to cause financial loss, but only "must wrong the victim's property rights in some way."[47] Any alleged falsehood must be material.[48] "Success of the scheme is not essential to completion of the offense."[49]

Neither is it "necessary that the scheme contemplate the use of the mails as an essential

---

[42] *Parr v. United States*, 363 U.S. 370, 389, 80 S. Ct. 1171, 1182 (1960) (citation omitted).

[43] *Kann v. United States*, 323 U.S. 88, 95, 65 S. Ct. 148, 151 (1944).

[44] *Munch v. United States*, 24 F.2d 518, 519 (5th Cir. 1928); *see also Kreuter v. United States*, 218 F.2d 532, 534 (5th Cir. 1955) ("[T]he gravamen of the offense is the use of the mails.").

[45] *Ratcliff*, 488 F.3d at 643-44 (footnote omitted).

[46] *Id.* at 644-45 (citation omitted).

[47] *Id.* at 648 (citation omitted).

[48] *Neder v. United States*, 527 U.S. 1, 25, 119 S. Ct. 1827, 1841 (1999).

[49] *Kreuter*, 218 F.2d at 535 (footnote omitted).

element."[50]  "[T]he mailing or causing the letter to be mailed is the crime, not merely devising the fraudulent scheme, and it is vital to the commission of the offense that the letter be in furtherance of the scheme."[51]  "[W]here the use of mails is a means of concealment so that further frauds which are part of the scheme may be perpetrated" such use may deemed to be in execution or furtherance of the scheme or artifice.[52]  Hence, "only if the mailings were 'a part of the execution of the fraud,' or . . . were 'incident to an essential part of the scheme,' do they fall within the ban of the federal mail fraud statute,"[53] though such mailings themselves need not be an essential part of the scheme.[54]

"To show that a mailing is 'incident to an essential part of the scheme,' the [G]overnment must demonstrate that 'completion of the alleged scheme . . . depend[ed] in some way on the information or documents that passed through the mail.'"[55]  "[M]ailings 'which facilitate concealment of the scheme' are covered by the statute."[56]  Legally compelled mailings may not necessarily be "unlawful 'step(s) in a plot,' 'part(s) of the execution of the fraud,' 'incident to an essential part of the scheme,' or . . . made 'for the purpose of executing such scheme,' within the meaning of s[ection] 1341,"[57] nor will they necessarily "constitute[] false pretenses and misrepresentations to obtain money."[58]

---

[50] *Pereira*, 347 U.S. at 8, 74 S. Ct. at 362 (citation omitted).

[51] *Stapp v. United States*, 120 F.2d 898, 899 (5th Cir. 1941).

[52] *Kann*, 323 U.S. at 94-95, 65 S. Ct. at 151 (footnote omitted).

[53] *Parr*, 363 U.S. at 390, 80 S. Ct. at 1183 (citation omitted).

[54] *United States v. Maze*, 414 U.S. 395, 400, 94 S. Ct. 645, 648 (1974) (citations omitted); *see also Schmuck v. United States*, 489 U.S. 705, 710, 109 S. Ct. 1443, 1447-48 (1989) (citation omitted) ("To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme.").

[55] *Ingles*, 445 F.3d at 835 (footnote omitted) (alteration in original).

[56] *United States v. Lane*, 474 U.S. 438, 453, 106 S. Ct. 725, 734 (1986) (footnote omitted).

[57] *Parr*, 363 U.S. at 391, 80 S. Ct. at 1183-84 (citations omitted).

[58] *Id.* at 391-92, 80 S. Ct. at 1184.

Relying on Supreme Court precedent, the Fifth Circuit stated

the mailing in a federal mail fraud prosecution need not be sent by the defendant or his co-conspirator. It may be sent by a victim of the plot or an innocent third party, so long as the mailing is "incident to an essential part of the scheme, . . . or a step in [the] plot."[59]

The Fifth Circuit pointed out "[t]he mailing of the letter may be by an innocent agent, unconnected with the schemers."[60] Hence, the Fifth Circuit explained "[t]he [G]overnment need not prove that the accused used the mails himself or actually intended that the mail be used."[61] Again, the Fifth Circuit "recognize[d] that both innocent mailings (i.e., those that do not contain a misrepresentation) and 'mailings between innocent parties' can support a mail fraud conviction."[62] At trial, the Government may present sufficient evidence of mail fraud by presenting evidence of legitimate mailings because such mailings may be "used as a smoke screen to conceal the fraudulent ones" because they "drastically lower the chances of detection."[63] "[P]ost-purchase mailings which are designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the scheme."[64]

Defendants rely on the Supreme Court's decision in *United States v. Maze*,[65] the Sixth Circuit's decision in *United States v. Castile*,[66] and the Fifth Circuit's decisions in *United States v. Ingles*[67] and

---

[59] *Manges*, 110 F.3d at 1169 (citations omitted).

[60] *Stapp*, 120 F.2d at 899 (citation omitted).

[61] *Ingles*, 445 F.3d at 835 (footnote omitted) (internal quotation marks omitted) (alteration in original).

[62] *Id.* at 837-38 (footnotes omitted) (first alteration added).

[63] *United States v. Arledge*, 553 F.3d 881, 891 (5th Cir. 2008).

[64] *United States v. Ashdown*, 509 F.2d 793, 800 (5th Cir. 1975) (citations omitted).

[65] 414 U.S. 395, 94 S. Ct. 645.

[66] 795 F.2d 1273 (6th Cir. 1986).

[67] 445 F.3d 830.

*United States v. LaFerrirere*.[68]   The Government, on the other hand, relies upon the Supreme Court's decision in *Schmuck v. United States*,[69] the Fifth Circuit's decision in *United States v. Arledge*,[70] and the Sixth Circuit's decision in *United States v. Castile.*[71]

In *Maze*, the defendant was indicted on four counts of mail fraud after he stole his roommate's credit card, used it in California, Florida, and Louisiana at motels, and the motels subsequently sent sales slips to the Louisville bank that had issued the credit card.[72]   The Supreme Court explained that in order for the defendant to have caused the mails to be used depended on whether the "mailings were sufficiently closely related to [the defendant's] scheme to bring his conduct within the statute."[73]   The Supreme Court pointed out the success of the defendant's scheme did not depend upon the mailing of the invoices because it was complete when he checked out of the motel and did not depend upon who ultimately bore the loss.[74]   The Supreme Court determined the "the successful completion of the mailings from the motel owners here to the Louisville bank increased the probability that [the defendant] would be detected and apprehended,"[75] and therefore, the Supreme Court upheld the dismissal of the four counts of mail fraud.

In *Schmuck*, the defendant was indicted on twelve counts of mail fraud for rolling back the odometers of used cars, selling the cars to dealers for artificially inflated prices, who in turn sold the cars

---

[68] 546 F.2d 182 (5th Cir. 1977).

[69] 489 U.S. 705, 109 S. Ct. 1443.

[70] 553 F.3d 881.

[71] 795 F.2d 1273.

[72] 414 U.S. at 396, 94 S. Ct. at 646.

[73] *Id.* at 399, 94 S. Ct. at 648 (footnote omitted).

[74] *Id.* at 402, 94 S. Ct. at 649 (footnote omitted).

[75] *Id.* at 403, 94 S. Ct. at 650.

to consumers and mailed the title applications to the state transportation agency.[76]   The Supreme Court

held the title applications were a part of the execution of the fraudulent scheme because "they were

necessary to the passage of title, which in turn was essential to the perpetuation of [the defendant's]

scheme."[77]   The Supreme Court explained the mailing of the title applications was "an essential step in

the successful passage of title to the retail purchasers."[78]   According to the Supreme Court, "a failure of

this passage of title would have jeopardized [the defendant's] relationship of trust and goodwill with the

retail dealers upon whose unwitting cooperation his scheme depended."[79]   The Supreme Court upheld

how the Government charged the mail fraud counts.

In *Castile*, the defendant was indicted on four counts of mail fraud after he schemed to burn

down a restaurant and collect on a fire insurance policy.[80]   Relying on *Maze*, the Sixth Circuit pointed out

that "[i]n order for a mailing to be in furtherance of a scheme, the scheme's completion or the prevention

of its detection must have depended in some way on the charged mailing."[81]   The Sixth Circuit stated that

"where the purpose of a mailing conflicts with, rather than promotes, the scheme to defraud, the mailing

will not support a conviction under the mail fraud statute."[82]   The Sixth Circuit explained the issue is

"whether the scheme's completion or the prevention of its detection depended in some way on the

mailings which formed the basis of the indictment."[83]   Based upon the facts of the case, "where the

---

[76] 489 U.S. at 707, 109 S. Ct. at 1446.

[77] *Id.* at 712, 109 S. Ct. at 1448.

[78] *Id.* at 714, 109 S. Ct. at 1450.

[79] *Id.*, 109 S. Ct. at 1450.

[80] 795 F.2d at 1274.

[81] *Id.* at 1278 (citations omitted).

[82] *Id.* (citations omitted).

[83] *Id.* at 1279.

purpose of the mailings was to defeat a fraudulent scheme," the Sixth Circuit "preclude[d] the application of the mail fraud statute."[84]

In *LaFerriere*, one of the defendants was indicted for mail fraud.[85]  The mailing upon which his conviction was based was a letter sent by an innocent attorney on behalf of his innocent client to a co-schemer regarding monies the client had sent the co-schemer as part of the scheme.[86]  The Fifth Circuit distinguished the "lulling" cases from the instant case, "where the mailing did not have any tendency to postpone inquiries or discovery of the fraud, but rather alerted the perpetrators to the fact that a victim strongly suspected that he was a victim of a fraud and proposed to take remedial action."[87]  Drawing on the Supreme Court's decision in *Maze*, the Fifth Circuit pointed out "the close relation of the mailings to the scheme does not turn on time or space, but on the dependence in some way of the completion of the scheme or the prevention of its detection on the mailings in question."[88]  The Fifth Circuit concluded the mailing, whose "likely effect" "would be to further detection of the fraud or to deter its continuation" "was not 'in execution of the scheme or artifice to defraud.'"[89]

These cases provide the contours for a determination of whether a mailing is in furtherance of the scheme to defraud, while the Fifth Circuit's decisions in *Ingles* and *Arledge* provide the fine points. Defendants rely on *Ingles*, while the Government relies on *Arledge*.

In *Ingles*, a father and son were indicted on four counts of mail fraud.[90]  The son owned a camp

---

[84] *Id.* at 1281.

[85] 546 F.2d at 183.

[86] *Id.* at 185.

[87] *Id.* at 186.

[88] *Id.* at 187.

[89] *Id.*

[90] 445 F.3d at 833.

house, which a friend of the father's burned to the ground.[91]  The son filed a claim under his

homeowner's insurance policy for the camp house and its contents.[92]  Under the terms of the insurance

policy, the insurance company was obligated to pay the lienholder of the property and the son, unless the

son was involved in the arson.[93]  The insurance company mailed three letters to the son and one letter to

the lienholder, which formed the basis of the mail fraud charges.[94]  After hearing the evidence, the jury

acquitted the son, but it found the father guilty on all four counts.[95]

The Fifth Circuit reversed.  The Fifth Circuit pointed out the son was not involved in the arson

scheme, and therefore, the letters that the insurance company mailed to the son as a result of the

insurance claim were not the result of a fraudulent claim and could not sustain the father's mail fraud

convictions.[96]  The Fifth Circuit pointed out the fact that the father was to share in the proceeds of the

scheme with his co-schemer did not establish mail fraud because there was no evidence the son knew a

fraud had been perpetrated when he submitted his claim.[97]  The Fifth Circuit concluded that while the

son's legitimate, non-fraudulent claim caused the insurance company to send the letters, there was no

evidence the son was obligated to share the insurance proceeds with his father.[98]  Declining to endorse a

broad reading of section 1341's mailing requirement, the Fifth Circuit held the Government failed to

---

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* at 834.

[96] *Id.* at 836.

[97] *Id.* (footnote omitted).

[98] *Id.* at 836-37.

identify a fraudulent insurance claim and therefore could not sustain the father's mail fraud convictions.[99]

In *Arledge*, the Government charged the defendant with four counts of mail fraud after he participated in a scheme to defraud a settlement fund by submitting multiple claims, some of which were false, for which he would receive a contingent share of attorney's fees.[100] The Government relied upon four checks the defendant received for attorney's fees to support the mail fraud counts, but did not identify specific instances of fraud that resulted in the attorney's fees.[101]

The Fifth Circuit upheld the defendant's mail fraud convictions based upon these letters, despite the defendant's argument that the Government failed to provide a nexus between the attorney's fees and the false claims.[102] The Fifth Circuit concluded there was sufficient evidence the checks were part of the scheme to defraud because the defendant submitted legitimate claims as a "smoke screen" to conceal the false claims, which resulted in the issuance of the checks.[103] The Fifth Circuit pointed out that by mixing the legitimate and false claims, the defendant was able to lower his chances of detection.[104] Furthermore, the Fifth Circuit found that the defendant's perpetuation of the scheme depended upon him being able to maintain a harmonious relationship with attorneys who were not involved in the scheme.[105] The Fifth Circuit held "a rational trier of fact could have found that [the defendant] used the 'innocent' mailings to conceal the 'easily detectable' fraud and the mailings were incidental to the scheme to defraud."[106]

---

[99] *Id.* at 837.

[100] 553 F.3d at 886-87, 890.

[101] *Id.* at 890.

[102] *Id.* at 890-92.

[103] *Id.* at 891.

[104] *Id.*

[105] *Id.* at 891-92.

[106] *Id.* at 892.

Here, the manner in which the Government charged the mail fraud count is virtually indistinguishable from the nature of the scheme and mailings in *Ingles*. As in *Ingles*, the Government here alleged Defendants schemed to and did perpetrate a fraud. Similarly, here the Government alleged an innocent third-party sent a mailing, which was received by another innocent third-party. In this case, just as in *Ingles*, both third-parties were victims of the alleged fraudulent conduct. Here, the County and the third-party vendor who mailed the FedEx package were victims of the alleged scheme. The Government did not allege the third-party vendor was aware of the structured RFP. Furthermore, the Government did not allege the innocent third-party was going to share or otherwise subcontract any part of the Contract to Vendor-1. Hence, the innocent third-party's response to the RFP mirrors the son's insurance claim in *Ingles*. The son's submission of the insurance claim and the insurance company's response involved no fraud, just as here, the third-party vendor's response to the RFP, as the Government freely admits, did not involve fraud.[107]

The only ready distinction between this case and *Ingles* is that in *Ingles*, the Government relied on the insurance company's response to the son's claim, while here the Government relies on the third-party's submission to the County. In other words, the insurance company's mailing was a second innocent mailing, the son's submission of the claim being the first. This distinction is one of form rather than substance. Just as the Fifth Circuit found the son's claim was not fraudulent, here, the third-party vendor's claim was not fraudulent. In either case, the mailing allegedly came about as a <u>result</u> of fraud, but neither mailing perpetrated or perpetuated the fraud.

The Government's argument that the mailing of the FedEx package was in furtherance of the scheme because it was a "smoke screen" is an overly broad reading of section 1341, which the Fifth Circuit rejects. The Government extends Fifth Circuit precedent too far by grafting the "innocent"

---

[107] *See* Gov't's Resp. at 12 ("The government admits that the charged mailing does not contain a specific instance of fraud.").

mailing onto the "smoke screen" justification. The Government offers the innocent third-party vendor's FedEx mailing to establish Defendants created a "smoke screen" to avoid detection.

The mailings the Government offered and relied on in *Arledge*, the checks for attorney's fees, were sent to the defendant based upon false and legitimate claims, which the defendant submitted in order to receive those checks. The Fifth Circuit stated <u>the legitimate claims</u> the defendant submitted could be a smoke screen. It decidedly did <u>not</u> state the <u>checks</u> the Government offered were the smoke screen. Here, the mailing the Government relies on was not submitted by Defendants, but an <u>innocent party</u>. The smoke screen mailings of *Arledge* were sent by the <u>defendant</u>, perpetuated the scheme, and in fact were the <u>object</u> of the scheme.

The Government's argument that the mailing was meant to create the appearance of a legitimate bidding process is invalidated by *Ingles* and undermined by *Arledge* because here the innocent third-party vendor had no knowledge of the scheme, and therefore did not intend to create a smoke screen. The mailing was not necessary to create the appearance of a legitimate bidding process, nor did it further the purpose of the scheme because it was in <u>direct conflict</u> with the goal of having the Contract awarded to Vendor-1. That is, the innocent third-party's bid was in direct competition with Vendor-1 and conceivably could have thwarted the very purpose of the scheme.

Therefore, based upon a review of these Fifth Circuit cases, the law does not permit the Government to rely on the FedEx package to sustain the mail fraud charge. This extension is untenable because it potentially makes a defendant liable for otherwise innocent conduct, which is not necessary to further a scheme and, in fact, poses a direct threat to the object of an alleged scheme.

C.       *Counts Four and Five – Bribery*

1.       <u>Parties' Arguments</u>

Finally, Defendants request the Court to dismiss Counts Four and Five against Sanchez and Jones, respectively, because the alleged offenses occurred outside of the five-year statute of limitations

period.  Pursuant to section 666, Title 18 of the United States Code, the "thing of value" the Government

alleged Jones gave Sanchez, with the intent to influence and be influenced, respectively, was a $750.00

check, which Jones wrote to Sanchez on January 28, 2004.[108]  Sanchez cashed the check on January 29,

2004, approximately five years and four months before the Government indicted Defendants on these

charges.  Additionally, Defendants contend the money transfer was legal and was not a bribe.  They

assert it was a lawful donation from Jones to Sanchez for Sanchez to attend a seminar in Las Vegas,

Nevada.

The Government contends a bribe does not conclude at the time of the bribe, and instead points

to its burden to prove the transaction following the bribe exceeded $5,000 as proof of bribery's

continuing nature.  The Government argues "[t]he offense is not complete until the [G]overnment can

show the connection between the bribe and the subsequent transaction."[109]  Essentially, the Government

asserts the transaction is not complete until the Government goes to trial.

2.  Analysis

The Government charged Sanchez with bribery, pursuant to section 666(a)(1)(B).  Section

666(a)(1)(B) makes it a crime for a person who is an agent of a locality to

> corruptly solicit[] or demand[] for the benefit of any person, or accept[] or agree[] to
> accept, anything of value from any person, intending to be influenced or regarded in
> connection with any business, transaction, or series of transactions of such organization,
> [G]overnment, or agency involving anything of value of $5,000 or more.[110]

The Government charged Jones with bribing Sanchez pursuant to section 666(a)(2), which makes it a

crime for someone to

> corruptly give[], offer[], or agree[] to give anything of value to any person, with intent to
> influence or reward an agent of an organization or of a State, local . . . , or any agency

---

[108] *See* Defs.' Mot. Dismiss Indictment at ¶ 6.

[109] Gov't's Resp. at 10.

[110] 18 U.S.C § 666 (a)(1)(B).

thereof, in connection with any business, transaction, or series of transactions of such organization, [G]overnment, or agency involving anything of value of $5,000 or more.[111]

Sections 666(a)(1)(B) and 666(a)(2) do not require the Government to prove federal funds "were directly involved in a bribery transaction, or that the federal monies funded the corrupt transaction."[112]  Pursuant to section 666(a)(1)(B), the Government must show that the governmental agent solicited, demanded, accepted, or agreed to accept "anything of value" with the intention of being influenced.[113]  Sections 666(a)(1)(B) and 666(a)(2) do not require the Government to prove that the agent was actually influenced or that the agent devised a specific plan demonstrating the influence.  The Government only has to prove the agent participated in the transaction of "anything of value" with the intention of being influenced or, alternatively, pursuant to 666(a)(2), with the intent to influence.[114]

Section 3282, Title 18 of the United States Code, bars prosecution of any federal offense not punishable by death after five years have passed.  The only exception to section 3282 is when a longer statute of limitation period is "expressly provided by law."[115]  "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time."[116]  Statute of limitations are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time."[117]  "Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity."[118]

---

[111] *Id.* § 666 (a)(2).

[112] *United States v. Marmolejo*, 89 F.3d 1185, 1191 (5th Cir. 1996).

[113] *Id.*

[114] *United States v. Abbey*, 560 F.3d 513, 520 (6th Cir. 2009).

[115] 18 U.S.C. § 3282(a).

[116] *Toussie v. United States*, 397 U.S. 112, 114, 90 S. Ct. 858, 860 (1970).

[117] *Id.* at 114-15, 90 S. Ct. at 860.

[118] *Id.* at 115, 90 S. Ct. at 860.

The statute of limitations for criminal laws usually begins to run when the crime is completed.[119] Section 3283 "is to be liberally interpreted in favor of repose."[120] If, however, a crime is considered a "continuing offense" the statute of limitations does not start to run until the last act in furtherance of the crime ends.[121] A "continuing offense" is a "term of art, and does not merely mean an offense that continues in a factual sense."[122] A crime qualifies as a "continuing offense" if the "explicit language of the substantive criminal statute compels such a conclusion" or "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."[123] A "continuing offense is not the same as a scheme or pattern of illegal conduct."[124]

Section 666 is not a continuing offense, but rather a completed offense. There is nothing in the statutory language that indicates Congress intended bribery to be a continuing offense.[125] For bribery charged pursuant to section 666, the statute of limitation begins to run when each element of the statute is met, which is when the "anything of value" is exchanged with the requisite intent to influence or be influenced.[126] Here, the charged bribery offenses were completed on January 28, 2004. On that day, Sanchez accepted, and Jones gave, a thing of value – the $750.00 check. If the facts are as the

---

[119] *Id.*, 90 S. Ct. at 860.

[120] *Id.*, 90 S. Ct. at 860.

[121] *United States v. Yashar,* 166 F.3d 873, 875 (7th Cir. 1999).

[122] *Id.*

[123] *See id.* (citing kidnaping, conspiracy, and bigamy as examples of continuing offenses) (internal citation omitted).

[124] *United States v. Jaynes*, 75 F.3d 1493, 1506 (10th Cir. 1996).

[125] *See Yashar*, 166 F.3d at 877.

[126] *See United States v. Bustamante*, 45 F.3d 933, 942 (5th Cir. 1995) (acknowledging bribery is not a "crime that has continuing effects after its completion," but finding indictment against defendant to be proper because he was "charged with accepting illegal gratuities over an extended period of time," some of which occurred within five-year statute of limitations period).

Government alleged, Sanchez accepted the check with the intent of being influenced, and Jones gave the check with the intent to influence. Hence, this is the day the statute of limitations began to run.

For purposes of the statute of limitations, it is irrelevant that the Government must prove the requisite intent pertained to a transaction valued over $5,000. The Government's burden does not relate to when the statute of limitations begins to run, nor should it be used by the Government to convert bribery into a continuing crime. The statute of limitations is meant to limit the Government from filing untimely charges and to encourage it to timely investigate possible criminal activity.[127] Thus, the Government's May 28, 2009, Indictment for these charges was untimely.

## IV.    CONCLUSION AND ORDERS

The Court finds the Government timely and sufficiently charged Counts One and Two of the Indictment. While the Government just barely timely charged Count Three of the Indictment, the alleged mailing the Government relies on cannot, as a matter of law, support the mail fraud charge. The Government failed to timely charge Counts Four and Five of the Indictment because the charged bribery conduct occurred outside of the five-year statute of limitations period.

Accordingly, the Court concludes it should, and hereby does, **GRANT** in part and **DENY** in part Jones and Sanchez's "Defendants' Joint Motion to Dismiss All Five Counts of the Indictment" [Rec. No. 72]. Counts Three, Four, and Five of the Indictment are **DISMISSED**.

**SO ORDERED.**

**SIGNED** this **28th** day of **October, 2009**.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

---

[127] *See Toussie*, 397 U.S. at 114-15, 90 S. Ct. at 860.