IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| Plaintiff, | § | |
| | § | SEALED |
| v. | § | EP-09-CR-1567-FM |
| | § | |
| LUTHER JONES | § | |
| | § | |
| | § | |
| Defendant. | § | |

## GOVERNMENT'S RESPONSE TO DEFENDANT LUTHER JONES' MEMORANDUM CONCERNING GUIDELINES CALCULATION

Comes now the United States of America, through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney and files this its Government's Response to Defendant Luther Jones' Memorandum Concerning Guidelines Calculation and for good cause would show the following.

## I.
## EX POST FACTO CLAUSE DOES NOT APPLY POST BOOKER

Defendant asserts that under the Ex Post Facto provisions, and because the offense was committed in 2004, the 2003 Guidelines should apply and that, by applying the 2003 guidelines, the Defendant's sentence would be less severe.

An Ex Post Facto law is a law that retroactively changes the legal consequences of acts committed or the legal status of facts and relationships that existed prior to the enactment of the law. What is commonly referred to as the "Ex Post Facto Clause" is actually two Ex Post Facto clauses in the United States Constitution: Article 1, Section 9, Clause 3, and Article 1, Section 10. Ex Post Facto laws:

(1) Make criminal an action done before the passing of the law, which was innocent when done;
(2) Aggravate a crime or make a crime greater than it was when committed;
(3) Change the punishment, and inflict a greater punishment, than the law annexed to the crime when committed; and
(4) Alter the legal rules of evidence, and receive less or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

See *Calder v. Bull*, 3 U.S. 386, 389-90 (1798); *Carmell v. Texas*, 529 U.S. 513, 525 (2000).

Under the pre-*Booker* mandatory guidelines, courts took the view that the Ex Post Facto provisions prevented them from applying the higher Guidelines range in cases where the range increased after the date of the offense. *See Miller v. Florida*, 482 U.S. 423 (1987). Shortly after *Booker*, the Seventh Circuit took a different view in *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006). The Defendant in *Demaree* had received a higher sentence because the Guidelines range changed between the date of the offense and the date of her sentencing. The Seventh Circuit held that the district court did not violate the Ex Post Facto Clause by applying the version of the Sentencing Guidelines in effect at the time the Defendant was sentenced rather than the less severe version of the Guidelines that was in effect when she committed the offense. The court noted, that "*Booker* demoted the Guidelines from rules to advice," and that "the Ex Post Facto clause should apply only to laws and regulations that bind rather than advise." *See also United States v. Castillo-Estevez* 597 F.3d 238, 241 (5th Cir. 2010). In *United States v. Dupas*, 417 F.3d 1064, 1067-68 (9th Cir. 2005), the defendant argued that applying the *Booker* remedy of discretionary Guidelines violated Ex Post Facto principles. The Court rejected this view. The *Booker* decision directed courts to apply the remedy to cases on direct review. Because due process Ex Post Facto limitations apply only to substantive criminal statutes, not sentencing enhancements, the Court determined that

2

the defendant had fair notice of the maximum sentence. *See also United States v. Bad Marriage*, No. 03-00029 (9th Cir. Feb. 22, 2006) (Defendant received an upward departure sentence of 41 months that was reversed pre-*Booker* because the departure was not supported by the facts; on remand, post-*Booker*, he gets 48 months; affirmed citing *Dupas*).

Ex Post Facto is a limitation upon the powers of the legislature, and, by its own terms, does not apply to courts. *Rogers v.Tennessee*, 532 U.S. 451, 456, 461 (2001). "[A] judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is `unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id.* at 462. The key principal under Ex Post Facto Clause is fair warning to the Defendant. Where the law as it existed when a Defendant committed his crime provided sufficient warning of the maximum possible punishment for that crime, and the Defendant receives a sentence at or below that maximum, there is no constitutional violation.

## II.
## CALCULATING BASE OFFENSE LEVEL

The Defendant objects to the assertion that the "intended loss" was $9,717,450 under both theories of conviction for conspiracy to commit mail and wire fraud. First, as to the money or property object, the Government agrees that there was no actual loss; however, it disagrees that there was no intended loss.

**A.    Base Offense Level Guideline Calculation Based on "Money or Property" Conviction**

Under § 2B1.1, the appropriate amount of loss "is the *greater* of actual loss or intended loss." United States Sentencing Guidelines Manual § 2B1.1 application note 3(A) (2006) (emphasis added). The Government agrees that there was no actual loss; however, disagrees that there was no

3

intended loss The guidelines define "intended loss" as "the pecuniary harm that was intended to result from the offense ... and ... *includes intended pecuniary harm that would have been impossible or unlikely to occur* (e.g., as in a Government sting operation, or an insurance fraud in which the claim exceeded the insured value.)." *Id.* at n.3(A)(ii).

Defendant argue that there was no intended loss because if the digitization contract had been awarded to Altep or anyone else, the County would have received full value of the money El Paso County would have paid for it. However, Defendant's fraud consisted not only of winning the contract but consisted of the entire process of issuing the RFP and obtaining the contract.

During the trial, the evidence showed that on November 3, 2003, Commissioners Court for the County of El Paso voted to allow Defendant Sanchez "to meet with Piti Vasquez, Purchasing Agent, to determine the scope of digitizing 30 years of records filed with the District Clerk's Office." See Government's Trial Exhibit 115, p. 14.

After the Defendants discovered they were not given authority to seek a Request for Proposal ("RFP"), they conspired to obtain authority to allow the Purchasing Department to issue an RFP. Thereafter, on March 1, 2004, based on the Defendants' actions, Commissioners Court instructed "the Purchasing Agent to issue a Request for Proposals for the digitization project, *in a phased manner*, for the District Clerk's Office." See Government's Trial Exhibit 124, p. 12. At this point, Defendants had already prepared an RFP for the project; however, it was not prepared to complete the project in a phased matter, as the County had authorized. Therefore, without the Defendants actions, the County of El Paso would never have issued an RFP that could have cost the County of El Paso $9,717,450.

In the alternative, under the Guidelines, the offense level for fraud offenses is linked

explicitly to the harm caused to victims, measured in terms of monetary loss. *See generally* U.S.S.G. § 2B1.1 (b). The application notes to the Guidelines shed further light on the meaning of the provisions and assist courts in applying the Guidelines. *See Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). U.S.S.G. § 2B1.1 application note 3(B) provides that loss may be calculated based on the gain by the wrongdoer "only if there is a loss but it reasonably cannot be determined."

In the case at hand, determining the loss is difficult because the illegal scheme was interrupted by the discovery of the County Attorney's Office that a bid summary was provided to the defendants. Thus, the interruption prevents the court from being able to actually determine any value of service that the defendants may have provided if the contract would have been entered into.

Finally, the court need only make a reasonable estimate of the loss. U.S.S.G. § 2B1.1 application note 3(C). The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. *Id.* Therefore, the total amount of the contract would be a reasonable estimate of intended loss based upon the evidence provided at trial.

**B.     2003 Guidelines**

Even if the Ex Post Facto Clause provisions applied, the sentence at issue here would not have been lower under § 2C1.7 of the Guidelines. Defendant's position is based on application note 2 of § 2C1.7  which states the following:

> *"Loss", for purposes of subsection (b)(2)(A), shall be determined in accordance with Application Note 3 of the Commentary to §2B1.1 (Theft, Property Destruction, and Fraud). The value of "the benefit received or to be received" means the net value of such benefit. Examples: (1) A Government employee, in return for a $500 bribe, reduces the price of a piece*

5

*of surplus property offered for sale by the Government from $10,000 to $2,000; the value of the benefit received is $8,000. (2) A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000. Do not deduct the value of the bribe itself in computing the value of the benefit received or to be received. In the above examples, therefore, the value of the benefit received would be the same regardless of the value of the bribe.*

However, Defendant fails to take into account that the County of El Paso had not intended to enter into any contracts and, that but for the Defendant's actions, the County would not have entered into a contract worth over $9,000,000, which would have given the Defendants the same specific offense characteristic of 20 under § 2C1.7 .

Additionally, as stated previously, determining the net value is difficult because the illegal scheme was interrupted by the discovery of the County Attorney's Office that a bid summary was provided to the Defendants. Thus, the interruption prevents the court from being able to actually determine any "value" that the Defendant may have received if the contract would have been entered into. Consequently, in U.S.S.G. § 2C1.7 application note 4 states the following:

*In some cases the monetary value of the unlawful payment may not be known or may not adequately reflect the seriousness of the offense. For example, a small payment may be made in exchange for the falsification of inspection records for a shipment of defective parachutes or the destruction of evidence in a major narcotics case. In part, this issue is addressed by the adjustments in §2C1.1(b)(2), and §2C1.1(c)(1), (2), and (3). However, in cases in which the seriousness of the offense is still not adequately reflected, an upward departure is warranted. See Chapter Five, Part K (Departures).*

Whether, based on the unknown monetary value or because an eight-level(8) adjustment would not adequately reflect the seriousness of the offense, the Court would be free to upwardly depart to a level equal to or greater than 20. Therefore, the Defendants cannot show under § 2C1.7 of the 2003 Guidelines that his sentence would be lower.

Wherefore, premises considered the Government respectfully request this Court to deny the

Defendant's objections.

Respectfully submitted,
JOHN E. MURPHY
UNITED STATES ATTORNEY


By:_____/s/_____
 LAURA FRANCO GREGORY
Assistant U.S. Attorney
Texas Bar No. 24007199
 700 E. San Antonio, Ste. 200
El Paso, Texas  79901
Telephone (915) 534-6884
Facsimile (915) 534-6861


_____/s/_____
ANTONIO FRANCO, JR.
Assistant United States Attorney
Texas Bar #00784077
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
915) 534-6884

CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2011, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

John D. Cline
Attorney for Luther Jones
115 Sansone St, Suite 1204
San Francisco, CA 94104

Stephen G. Peters
Attorney for Luther Jones
1715 Wyoming Ave.
El Paso, TX 79902

Grant Jones
Attorney for Luther Jones
5826 Beauvais Dr.
Corpus Christi, TX 78414

/s/
LAURA FRANCO GREGORY
Assistant U.S. Attorney

/s/
ANTONIO FRANCO, JR.